## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BLUETEAM ROOFING, LLC, ET AL.**           **CIVIL ACTION**

**VERSUS**           **NO. 23-931**

**VINCENT PIAZZA JR. & SONS**           **SECTION "O"**
**SEAFOOD, INC.**

## ORDER AND REASONS

Before the Court in this breach of contract litigation are cross-motions for summary judgment: (1) motion[1] for partial summary judgment on its breach of contract claim by Plaintiff Sendero Restoration Services, LLC ("Sendero"); and (2) motion[2] for summary judgment by Defendant Vincent Piazza Jr. & Sons Seafood, Inc. ("Piazza"). For the following reasons, the Court **DENIES** both motions.

## I.    BACKGROUND

Sendero is a general contractor specializing in commercial restoration, roofing, and exterior repairs. Piazza is a wholesale seafood distributor with a facility in Elmwood, Louisiana.[3]

After Hurricane Ida damaged Piazza's facility, Piazza and Sendero negotiated and ultimately, in September 2021, signed a Restoration Services Agreement ("Restoration Contract").[4] Under the Restoration Contract, Piazza gave Sendero

---

[1] ECF No. 48. This motion is designated as a "partial" motion because the Court's understanding is that the motion seeks summary relief with respect to Plaintiff Sendero's breach-of-contract claim only.

[2] ECF No. 49.

[3] ECF No. 49-3 ¶ 2 (Hirsch Decl.).

[4] ECF No. 48-5 (Restoration Contract).

"exclusive rights" to repair its property. Sendero in turn agreed to provide repair services as outlined therein.[5] Respecting the scope of the services, Piazza "affirm[ed] that Sendero will have the right per this Agreement to perform all the work associated with [Piazza's] primary building and [its] roof[.]"[6]

According to the Restoration Contract, Sendero's work began with an "initial evaluation" in which Sendero was tasked with and agreed to "investigate and evaluate all of the damages to the Subject Property" and to "provide the Customer and Customer's insurance carrier with" scope and cost estimates.[7] Sendero was obliged to be present at all inspections with Piazza's insurance carrier, adjuster, agents, consultants, and contractors to determine scope of work and cost of repairs.[8] The parties agreed the contract would be void if Piazza's insurance claim was denied.[9]

The "amount payable" to Sendero was defined as the "Agreed Amount" and was "ascertained by reference to the insurance carrier's damages calculations and other Agreement Documents." The parties agreed that this "Agreed Amount" Piazza would owe for repairs "shall be the replacement value delineated in the insurance carrier's Proof of Loss[.]"[10]

---

[5] *See id.*

[6] *Id.* § 1.

[7] *Id.* § 1.1.

[8] *Id.* § 1.3.

[9] *Id.* § 1.4 (agreeing that the Restoration Contract "shall be void if the customers insurance claim is denied" (emphasis removed)); *see id.* § 2 (providing that "the Agreement Amount Customer owes Sendero for repairs shall be the replacement value delineated in the insurance carrier's Proof of Loss, . . . as well as any adjustments made by Change Orders"); *see id.* § 2.1 (agreeing that Sendero will invoice Piazza and Piazza will pay Sendero "subject to insurance company approval" as detailed therein).

[10] *Id.* § 2.

As for scheduling work, the parties agreed that Piazza "will schedule the work within thirty (30) days of [Piazza's] receipt of any payments from the insurance carrier, and Sendero will commence the work within thirty (30) days after [Piazza] schedules the work."[11]

With respect to terminating the Restoration Contract, Sendero could choose to terminate the agreement if Piazza "substantially breach[ed]" the terms after giving Piazza written notice and ten days to cure. In such a situation, Sendero was owed payments for work done and materials provided, as well as attorneys' fees:

> **6.2. Sendero Terminates Agreement:** Sendero may terminate this Agreement if Customer fails to pay any Invoice or **in any way substantially breaches the terms of this Agreement**. In such event, Sendero will provide Customer with written notice of breach of the Agreement and allow Customer ten (10) days to cure the breach of Agreement. **If customer fails to cure such breach within the ten-day grace period, Sendero may terminate the Agreement and recover from Customer any past-due payments for work done and materials provided.** In the event Sendero is required to seek the services of any attorney to collect these payments, Customer will pay for the reasonable and necessary attorneys' fees and costs attributable to such legal proceeding.[12]

Piazza could choose to terminate the Restoration Contract so long as it had "good cause," described as "such as in the event that Sendero substantially breaches the terms[.]" But if Piazza chose to cancel the agreement in absence of such "good cause," the parties agreed Sendero was entitled to liquidated damages:

> **6.1. [Piazza] Terminates Agreement:** [Piazza] may terminate this Agreement, **if good cause is determined, such as in the event that Sendero substantially breaches** the terms of this Agreement. If [Piazza] cancels this Agreement, **without good cause,** the Parties agree that **Sendero would be entitled to liquidated damages** for its

---

[11] *Id.* § 3.
[12] *Id.* § 6.2 (emphasis added).

out-of-pocket expenses and lost profits. The Parties agree that a reasonable liquidated damages amount would be forty-five (45%) of the Agreed Amount of this Agreement.[13]

Finally, the contract also contained a Texas choice-of-law provision.[14] The parties have jointly stipulated Texas law shall govern the dispute between Piazza and Sendero.[15]

Just over two months after the effective date of the Restoration Agreement, Sendero sold certain assets to BlueTeam Roofing, LLC, which is a co-Plaintiff in the instant lawsuit. The Asset Purchase Agreement between Sendero and BlueTeam carved out certain of Sendero's contracts from the purchase. Those contracts were subcontracted to BlueTeam, rather than assigned. Under the terms of the Asset Purchase Agreement, one of the contracts that was subcontracted to BlueTeam was the Restoration Contract with Piazza.[16]

Importantly, the Restoration Contract generally barred assignments of the rights and duties under the contract without written consent of the other party:

> Neither party may sell, assign, transfer, convey, pledge, encumber or otherwise dispose of this Agreement, or any of the rights or duties under this Agreement, without prior written consent of the other party, which shall not be unreasonably withheld or delayed.[17]

---

[13] *Id.* § 6.1 (emphasis added).

[14] *Id.* § 8.

[15] ECF No. 44 (Joint Pretrial Stipulations). Where, as here, the Court's jurisdiction is based on diversity of citizenship, the Court applies the substantive law of the forum state, Louisiana. *See Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). Under Louisiana law, contractual choice-of-law provisions are valid unless the chosen law contravenes the public policy of the state whose law would otherwise apply. La. Civ. Code art. 3540. No party has contested the validity of the Restoration Agreement's choice of Texas law to govern their agreement. Nor has any party argued that enforcing the provision would contravene the public policy of any state. Thus, the parties' choice of Texas law to govern their agreement applies to the breach of contract claim.

[16] The parties dispute whether Sendero subcontracted the work to BlueTeam or assigned the contract. For the reasons discussed below, the Court finds the Restoration Contract was not assigned to BlueTeam.

[17] ECF No. 48-5 § 7.

It did, however, permit Sendero to subcontract its work without requiring written consent:

> However, Sendero may sub-contract services provided hereunder without prior written consent of Customer. This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto, their successors and permitted assigns.[18]

In November 2021, Piazza received its first, partial payment from its insurance company for approximately $210,000.[19] The parties agreed this was insufficient for the amount of work that was needed to complete Piazza's repairs.[20] Between January 2022 and November 2022, Piazza and BlueTeam (who by that time had been subcontracted by Sendero to carry out the operations of the Restoration Contract) exchanged dozens of emails about Piazza's insurer's appraiser's estimate of damage and the condition of Piazza's building.[21] BlueTeam worked with the insurer to garner a larger reimbursement to carry out the necessary repairs.[22]

In November 2022, Vaughn Scott, Vice President of Operations at BlueTeam, informed Piazza that BlueTeam had ordered materials and was ready to begin the work repairing the damage to the building.[23] Mr. Scott's email attached the "full scope of work agreed to by the [insurance] carrier along with the full cost they are paying for the work" and stated that "[a]ll of the attached will be performed for the cost the

---

[18] *Id.*

[19] ECF No. 64 (Piazza agreeing with Sendero's claim that "the first payment from the insurance company was issued in November 2021").

[20] ECF No. 48-6 at 39:2-13 (Piazza Corp. Depo).

[21] *Id.* at 60:9–15 (Piazza Corp. Depo); *id.* at 52-141 (Exhibits).

[22] *Id.* at 52-141 (Exhibits).

[23] ECF No. 48-6 (Piazza Corp. Depo at 58:12-59:20); *id.* at 140 (Exhibit).

carrier has agreed to pay, there is no additional cost to you for this work/new systems."[24]

On December 7, 2022, Piazza's third-party claim administrator, under authority of its insurer Certain Underwriters at Lloyd's London, confirmed that Piazza would receive a final award of $1,351,394.63 for damage to its building.[25] The administrator attached a "Proof of Loss" form, which confirmed the "Replacement Cost" as $1,351,394.63.[26] At some point thereafter, Piazza received a check dated December 7, 2022 from the insurer for $967,482.39.[27] Piazza's checking account shows the cash was deposited into Piazza's account on February 3, 2022.[28]

Sendero asserts that sometime after Piazza received the insurer's check, even though the Restoration Contract required that Piazza "schedule the work within thirty (30) days of [Piazza's] receipt of any payments from the insurance carrier,"[29] Piazza refused to schedule the repair work and indicated it no longer wished to continue with the Restoration Contract.[30] Piazza disputes this account and says it wanted to proceed with the contract but was waiting for Plaintiffs to answer certain questions before it scheduled the work.[31]

---

[24] *Id.* at 140.

[25] ECF No. 48-7 at 4 (Piazza Proofs of Loss).

[26] *Id.* at 6.

[27] ECF No. 48-6 at 50 (check from minuteman adjusters dated December 7, 2022).

[28] *Id.* at 51 (Piazza's checking account record); *id.* at 62:24-63:2 (Piazza Corp. Depo.) ("Q. And this February of '23 letter from your lawyers came only after Piazza received over a million dollars in insurance funds, right? A. Yes.").

[29] ECF No. 48-5 § 3.

[30] ECF No. 35-5 (January 18, 2023 Demand Letter) (stating that Piazza had informed BlueTeam that it "wish[ed] to terminate the Contract" "without cause").

[31] ECF No. 49-1 at 3 ("Piazza had outstanding questions about the timing, sequencing, and scope of work that it was looking to have answered . . . in fact it was trying to get answers on how to continue moving forward with the Contract.") (citing ECF No. 49-3 ¶ 10) (Hirsch Decl.).

On January 18, 2023, Piazza received a demand letter (the "Demand Letter")
from Ian J. Kukoff, an attorney, sent on behalf of "BlueTeam Roofing, LLC f/k/a
Sendero Restoration Services, LLC."[32] The Demand Letter cited the Restoration
Contract's requirement that Piazza schedule repairs "within 30 days of receipt of any
payments of insurance proceeds from the carrier." It explained that BlueTeam was
"prepared, willing, and able to proceed with the Work" and had "already ordered
materials and committed labor and resource to commence the Work as soon as you
schedule it." But, the letter asserted, Piazza had informed BlueTeam that it "wish[ed]
to terminate the Contract" "without cause."[33]

The letter reminded Piazza that, per the terms of the Restoration Contract,
"termination without good cause entitles BlueTeam to liquidated damages equal to
45% of the Agreed Price." It concluded:

> BlueTeam wishes to provide you with a final opportunity [to] schedule
> the Work and avoid paying the contractual liquidated damages for
> termination without good cause. Accordingly, demand is made that you:
> (1) confirm in writing to the undersigned that you are withdrawing
> termination of the Contract and that you intend to proceed with the
> Contract to have BlueTeam perform the Work as agreed; (2)
> immediately notify BlueTeam of whether you have received any
> insurance proceeds from your insurance carrier; and if so (3) promptly
> schedule BlueTeam to commence the Work. If within ten (10) days of
> this letter, you fail to withdraw termination of the Contract, BlueTeam
> demands that you pay the sum of $566,791.34 (45% of $1,259,536.30) to
> BlueTeam, in care of the undersigned, representing the liquidated
> damages BlueTeam is entitled to receive if the Contract is terminated
> by you without good cause.[34]

---

[32] ECF No. 35-5 (January 18, 2023 Demand Letter).
[33] *Id.*
[34] *Id.*

Importantly, the Demand Letter from Mr. Kukoff informed Piazza that Sendero had been "purchased by BlueTeam Roofing, LLC, whereupon BlueTeam became the owner of and successor in interest to Sendero. Sendero now operates under the BlueTeam name."[35]

Piazza claims it responded to the Demand Letter two weeks later, on February 1, 2023 (the "Response Letter").[36] The Response Letter was addressed to BlueTeam's CFO and vice president—David Mayer and Scott Vaughan—and was signed by Piazza's counsel, Dayal S. Reddy of the law firm Philip C. Hoffman, LLC. In the letter, without using the term "termination," Piazza took the "position" that "no contract exists" between Piazza and "Sendero and/or Blue Team." The Response Letter explained that Piazza's contract with Sendero "specifically require[d] written consent prior to assignment of the contract" and that "[n]o prior written consent has been provided or suggested thus far from Sendero."[37]

Mr. Reddy asserts he emailed the Response Letter to Mr. Kukoff's assistant at kukoff.assistant@blaxgray.com.[38] Mr. Reddy characterizes the letter as "terminating the Contract between Piazza and Sendero because of an impermissible assignment to BlueTeam."[39] According to Mr. Reddy's declaration, he never received a bounce back email or failure to send notification after sending the email.[40] Mr. Kukoff, however, claims he never received the email.[41] This may have been because his assistant "was

---

[35] *Id.*
[36] ECF No. 9-1 (Piazza's February 1, 2023 Response Letter).
[37] *Id.*
[38] ECF No. 60-2 (D. Reddy Decl.).
[39] *Id.*
[40] *Id.*
[41] ECF No. 55-7 (I. Kukoff Decl.).

close to ending her employment with the firm," or because the letter was not addressed to Mr. Kukoff and was not emailed to him directly.[42] Mr. Kukoff asserts that a search of the archived email records has not yielded any evidence that his assistant received the Response Letter.[43]

Believing it had never received a response to its Demand Letter, BlueTeam filed suit against Piazza in March 2023 for breach of contract and unjust enrichment, seeking liquidated damages and attorneys' fees.[44] In its complaint (the "Original Complaint"), BlueTeam alleged that Piazza had "elected to terminate the Contract without good cause" and that Piazza was accordingly liable to pay BlueTeam liquidated damages "being equal to 45% of the Agreed Amount of $1,259,536.30."[45] The Original Complaint described BlueTeam as the "successor-by-assignment to Sendero Restoration Services, LLC" and stated that "[i]n conjunction with its purchase of the assets of Sendero Restoration Services, LLC," BlueTeam "was assigned and assumed . . . the September 14, 2021 Restoration Services Agreement referenced herein."[46]

Piazza filed an Answer to the Original Complaint that denied the allegations. Attaching its Response Letter as an exhibit, Piazza stated that "[u]ndersigned counsel responded with a letter outlining why plaintiffs were not entitled to the recovery they seek" due to the contract's assignment to BlueTeam.[47]

---

[42] *Id.*
[43] *Id.*
[44] ECF No. 1 (Original Complaint).
[45] *Id.* ¶¶ 17-19.
[46] *Id.* at 1.
[47] ECF No. 9-1.

BlueTeam—presumably aware for the first time of Piazza's stance that it had terminated the Restoration Contract for good cause due to the contract's supposed assignment—filed, with Piazza's consent, a First Amended Complaint.[48] The First Amended Complaint added Sendero as a plaintiff and revised the language that Sendero had "assigned" the contract to BlueTeam, stating instead that BlueTeam was "assigned the task of completing" the Restoration Contract.[49] Piazza did not file an Answer to the First Amended Complaint.

Several months later, Plaintiffs BlueTeam and Sendero filed an unopposed motion seeking leave to amend the complaint once again.[50] This time, Plaintiffs sought to "clarify that Sendero Restoration Services, LLC remained responsible for the agreed upon restoration work to property owned by [Piazza]." The Court granted the motion and admitted the Second Amended Complaint, which clarifies that "Sendero remained responsible for providing the services under the Contract, while BTR (BlueTeam) was permissibly subcontracted to perform services under the Contract."[51] In this operative complaint, Plaintiffs continue to allege that "Piazza has elected to terminate the Contract without cause" and that Piazza "never responded to the January 18, 2023 letter from Plaintiffs' counsel."[52] Plaintiffs seek liquidated

---

[48] ECF No. 12 (unopposed motion for leave to file First Amended Complaint); ECF No. 14 (First Amended Complaint).
[49] ECF No. 14.
[50] ECF No. 32.
[51] ECF No. 35 ¶ 8.
[52] *Id.* ¶¶ 15-18.

damages of $566,791.35 (45% of the Agreed Amount) plus attorneys' fees and costs.[53]

Once again, Piazza did not file an Answer to the Second Amended Complaint.[54]

The parties now bring cross-motions for summary judgment. Piazza's motion asserts it validly terminated the contract for "good cause" in its February 1, 2023 Response Letter after it learned for the first time in the January 18, 2023 Demand Letter that the Restoration Contract had supposedly been assigned to BlueTeam without its consent. Piazza asserts it does not owe liquidated damages under the contract because it did not terminate for convenience, but rather for "good cause."

Plaintiff Sendero seeks summary judgment on its breach of contract claim only. It asserts Piazza did not terminate for "good cause" because the contract was never actually assigned and Sendero's attorney's statement to the contrary was a mere mistake. Sendero also asserts that, as stated in its initial January 18, 2023 Demand Letter, Piazza had already cancelled the Restoration Contract without "good cause"

---

[53] *Id.* ¶ 17.

[54] Although neither party had raised the issue, the Court ordered briefing on the effect of Piazza's failure to file an Answer to the Second Amended Complaint. *See* ECF No. 86. Piazza argues that Sendero has suffered no prejudice from Piazza's failure to file an answer (which was due to its previous counsel's oversight) because (i) the issues have long been joined in this case, including by Piazza's inclusion of its February 1, 2023 Response Letter as an exhibit to its answer to the Original Complaint; and (ii) Sendero never raised Piazza's failure to answer. The Court agrees Sendero would suffer no prejudice in allowing Piazza to file its answer and accordingly finds there was excusable neglect in this posture. *See* Fed. R. Civ. P. 6(b)(1)(B). Sendero never raised the issue and cannot now claim it is prejudiced by its inability to take advantage of Fed. R. Civ. P. 8(b)(6)'s rule that where "a responsive pleading is required and the allegation is not denied," the allegation is admitted. *See* ECF No. 87 ("Allowing Piazza to withdraw those admissions nearly two years later would deprive Plaintiffs of the benefit of Rule 8(b)(6)."). The failure to file the answer has not changed the parties' positions about the contested issue in this case. Piazza has consistently and actively asserted its belief that Sendero's assignment to BlueTeam constituted good cause to terminate the contract, including in its motion for summary judgment and opposition to Sendero's motion for summary judgment. *See e.g.,* *Wilson v. Brown*, No. 04-3637, 2007 WL 1035026, at *1 n.1 (D.N.J. Apr. 3, 2007) (finding plaintiff had not suffered any prejudice as a result of defendants' inadvertent failure to answer third amended complaint because defendants answered substantially similar second amended complaint and were actively litigating action).

prior to Piazza's purported February 1, 2023 Response Letter by refusing to schedule the repair work within 30 days of receiving the insurance payment. Sendero maintains that because Piazza terminated without "good cause" by refusing to schedule the work, Sendero is owed liquidated damages.

For the following reasons, the Court denies both motions.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In reviewing the record, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The Court "'resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with

evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id*. at 1265.

If, however, the nonmovant bears the burden of proof at trial on the dispositive issue, "'the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)). "'If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.'" *Guillot ex rel T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012)).

## III.   ANALYSIS

Under Texas law, "'[t]he essential elements in a breach of contract claim are as follows: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.'" *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (quoting *Frost Nat'l Bank v. Burge,* 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The parties do not dispute the validity of the Restoration Contract.

### A. Piazza's Motion for Summary Judgment

Defendant Piazza contends there is "no genuine issue of material fact that [it] terminated the Contract for good cause" because "[t]he plain language of the Contract allow[ed] [it] to cancel the Contract." Therefore, argues Piazza, as a matter of law, it cannot be required to pay the liquidated damages obligatory if termination occurs without "good cause."[55] Piazza cites the January 18, 2023, Demand Letter, which stated Sendero had been "purchased by BlueTeam Roofing, LLC," which was now the "owner of and successor in interest to Sendero."[56] As Piazza sees it, the Demand Letter provided Piazza "good cause" as a matter of law to terminate the agreement because it showed Sendero had breached the contract's anti-assignment provision. For the following reasons, the Court denies Piazza's motion.[57]

In construing a contract under Texas law, the court's role is to "ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "This analysis begins with the contract's express language." *Murphy Expl. & Prod. Co.-USA v. Adams*, 560 S.W.3d 105, 108 (Tex. 2018), *as corrected* (Nov. 30, 2019). "We 'give terms their plain, ordinary, and generally accepted meaning unless the instrument

---

[55] *See* ECF No. 48-5 § 6.1 ("If [Piazza] cancels this Agreement, without good cause, the Parties agree that Sendero would be entitled to liquidated damages . . . .").

[56] ECF No. 35-5 (January 18, 2023 Demand Letter). The Demand Letter also stated that Mr. Kukoff's law firm "represents BlueTeam Roofing, LLC f/k/a Sendero Restoration Services, LLC."

[57] Piazza also seeks to dismiss BlueTeam as a party from this lawsuit, arguing it has no privity of contract with BlueTeam. BlueTeam, however, maintains a claim in the alternative for unjust enrichment against Piazza that does not require privity of contract. *See McCleery v. Speed*, 2023 WL 1099149, at *4 n.5 (5th Cir. Jan. 30, 2023). Piazza does not challenge the merits of that claim in its brief and thus the Court does not address that alternative claim. *See* ECF No. 49 at 12-13; ECF No. 55 at 15-16.

shows that the parties used them in a technical or different sense.'" *Id.* (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

"'If the Court determines that the language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law.'" *Crane v. Rave Rest. Grp., Inc.*, 2023 WL 3735567, at *3 (5th Cir. May 31, 2023) (quoting *Alicea v. Curie Bldg., L.L.C.*, 632 S.W.3d 142, 153 (Tex. App.—El Paso, no pet. h.)). "'However, if the provision contains more than one reasonable interpretation, it is ambiguous and creates an issue of fact.'" *Id.* (citation omitted).

The Court finds there is a genuine dispute of material fact as to whether Piazza had "good cause" to terminate the contract based on the January 18, 2023 Demand Letter implying Sendero had breached the anti-assignment provision. To be sure, the evidence provided—the Asset Purchase Agreement and the Transition Services Agreement between Sendero and BlueTeam—reveals Sendero had not, in fact, assigned the Restoration Contract.[58] Rather, the Demand Letter's implication that

---

[58] The parties agree that under the APA—which has a Delaware Law provision—Sendero agreed to sell and assign to BlueTeam "all of the Seller's [Sendero's] legal and equitable right, title, and interest . . . in and to and under the Assumed Contracts." ECF No. 48-9 art. 1 § 1.2 (Asset Purchase Agreement). The parties further agree that "Assumed Contracts" are defined as "all of [Sendero's] rights and interests in and to all Contracts listed on Schedule 1.1(c) . . . (the 'Assumed Contracts') . . . ." *Id.* art. 1 § 1.1(c). Schedule 1.1(c) does not contain a list of contracts; rather, it cross-references "subcontractor agreements in Section 2.12, which is incorporated by reference herein." So Sendero agreed to sell and assign to BlueTeam all "Assumed Contracts," which are defined as the *subcontractor agreements* in Section 2.12.

Section 2.12 of the APA, in turn, provides: "Schedule 2.12 sets forth a list of all Material Contracts." Schedule 2.12, which lists all "Material Contracts," contains a sub-list of "Subcontractor Agreements" and a sub-list of "Restoration Service Agreements." The "Subcontractor Agreements" list does not include Piazza's contract. Rather, Piazza's contract is listed as a "Restoration Service Agreement," revealing that the Restoration Contact was *not* among the agreements, *i.e.*, the "Assumed Contracts," assigned to BlueTeam.

the Restoration Contract had been assigned (and not subcontracted) to BlueTeam appears to have been a careless mistake by Plaintiffs' attorney.[59] But, as Piazza points out, Piazza did not have the benefit of access to Plaintiffs' Asset Purchase Agreement when Piazza received the Demand Letter. Plaintiffs did not correct their error about the contract's assignment until well after they had commenced litigation against Piazza. And Piazza, of course, had no way of knowing Plaintiffs would later correct their error and reverse their position about the contract's assignment after litigation commenced. Piazza clearly and reasonably relied on Plaintiffs' statements when it sent the February 1, 2023 Response Letter and proceeded to defend itself in this lawsuit.

This does not mean Piazza's motion for summary judgment should be granted, however. The Court finds there are fact questions precluding summary judgment here. Primarily, there is a fact question as to whether the parties intended notice of an assignment without written permission to provide "good cause" for Piazza to

---

This reading of the APA renders its terms "clear and unambiguous" "according to their ordinary meaning" as required under Delaware law. *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.,* 36 A.3d 776, 780 (Del. 2012). Under the APA, "Assumed Contracts" has a distinct definition from "Material Contracts." *See* ECF No. 48-9 (Asset Purchase Agreement, Ex. A Definitions) ("'Assumed Contracts' has the meaning ascribed to such term in Section 1.1(c)," whereas "'Material Contracts" means "each of the following Contracts . . . to which the Seller is party or subject to or to which it is bound . . ." and sets forth a broad range of contracts). This distinction would be meaningless if, as Piazza argues, Section 2.12 incorporated by reference *all* "Material Contracts" (a broader range of contracts) into the (narrower) definition of "Assumed Contracts." And it would render Schedule 1.1(c)'s directive that the "Assumed Contracts" are the "*subcontractor* agreements in Section 2.12" meaningless if both the Subcontractor Agreements and the Restoration Services Agreements were assigned.

This analysis is bolstered by the "Transition Services Agreement" between Sendero and BlueTeam, an ancillary document to the APA. *See* ECF No. 48-10. The Transition Services Agreement provides that Sendero was to remain contractually responsible for certain "Jobs," though the actual services would be performed by BlueTeam. *See id.* § 1(b). Piazza's contract is found in the exhibit listing the "Jobs" for which Sendero remained contractually responsible. *Id.* Ex. B – New Jobs. The Court thus concludes that Sendero did not, in fact, assign the Restoration Contract to BlueTeam.

[59] ECF No. 35-5.

terminate the entire agreement. Contrary to Piazza's assertion that the "plain language" of the contract allowed Piazza to avoid liquidated damages if it terminated for breach of the anti-assignment provision, the Restoration Contract does not specify this constitutes "good cause" for termination. Instead, the contract states:

> Customer may terminate this Agreement, if good cause is determined, such as in the event that Sendero *substantially breaches* the terms of this Agreement. If Customer cancels this Agreement, without good cause, the Parties agree that Sendero would be entitled to liquidated damages for its out-of-pocket expenses and lost profits.[60]

The Restoration Contract does not define "good cause" or "substantially breaches."[61] And Piazza does not cite any language in the Restoration Contract that indicates the parties intended an assignment without written consent to be considered a "substantial[] breach[]" of the contract that would allow it to terminate the entire agreement without penalty. Neither the plain meaning of those terms nor the contract as a whole elucidates whether the parties intended assignment without written consent to be considered a "substantial[] breach[]." *See Holmes v. Newman*, 2017 WL 2871786, at *3 (Tex. App. July 6, 2017). The parties have not briefed whether the term is tantamount to a "material breach" upon which a Texas party's obligations to perform under a contract are discharged.[62] *U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 2015 WL 1310359, at *7 (W.D. Tex. Mar. 24, 2015)

---

[60] ECF No. 48-5 at 3 (emphasis added).

[61] *See generally* ECF No. 48-5.

[62] When a party commits a nonmaterial breach, however, the other party "'is not excused from future performance but may sue for the damages caused by the breach.'" *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (citation omitted). Whether a breach is material is a question of fact. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 127 (5th Cir. 2017); *see also Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (setting out factors for determining whether a party's breach is material).

("Under Texas law, a party's obligations to perform under a contract are *only* discharged upon breach by the other party if the breach is material.") (citing *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 753 (Tex. 2013) (emphasis added)). Nor does Piazza explain how it may have suffered damage as a result of Sendero assigning the contract to BlueTeam such that it would consider assignment a "substantial[] breach[]" of the contract. *See Bridgmon*, 325 F.3d at 577 (under Texas law, an essential element for breach of contract is that the party was "damaged as a result of the breach").

To that end, Sendero asserts Piazza suffered no damage from any purported assignment, and that Piazza's termination of the contract based on the supposed assignment was pretextual because Piazza was already seeking to exit the contract.[63] In support, Sendero points to the fact that Piazza began receiving and exchanging emails with BlueTeam personnel—indicating the contract may have been subcontracted or assigned—back in January 2022.[64] Indeed, Piazza exchanged approximately fifty emails with BlueTeam for the next eleven months, until November 2022.[65] During that time, Piazza never raised concerns the contract may have been assigned to BlueTeam or raised any issue about BlueTeam's performance at all. Piazza's corporate representative testified that Piazza did not know whether

---

[63] *See, e.g.*, ECF No. 35-5 (January 18, 2023 Demand Letter) (stating that Piazza had informed BlueTeam that it "wish[ed] to terminate the Contract" "without cause.").

[64] ECF No. 48-2.

[65] ECF No. 48-6 at 52-141 (email exhibits).

BlueTeam had better or worse financial condition, workers, insurance, or was more capable of performing the repair work than Sendero.[66]

Piazza retorts that it did not, and could not, know Sendero had supposedly assigned the contract until the January 18, 2023 Demand Letter. It contends that it assumed any prior communication from BlueTeam was "just some sort of name change or other affiliation," which is why it never raised the issue of potential assignment (and breach of contract) to Sendero.[67] As Piazza sees it, the Demand Letter was different; it definitively showed the Restoration Contract had been assigned. How or why Piazza would consider assignment without its consent a "substantial[] breach[]," however, remains unknown.

The Court accordingly finds these factual issues preclude summary judgment. The contract is ambiguous as to whether a purported assignment without consent would permit Piazza to terminate without penalty. *See Holmes*, 2017 WL 2871786, at *3 ("Although neither party argues the contract is ambiguous, 'whether a contract is ambiguous is a question of law to be decided by the Court.'") (citation omitted). "When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Coker*, 650 S.W.2d at 394. The parties at trial may present evidence regarding whether Sendero's January 18, 2023 Demand Letter showed it had "*substantially* breach[ed]" the Restoration Contract such that it provided Piazza requisite "good cause" to terminate without triggering the liquidated damages provision.

---

[66] ECF No. 48-6 Ex. 2 at 41:6-25 (Piazza 30(b)(6) Deposition).
[67] ECF No. 60 at 1.

Sendero also argues that Piazza's "intentional conduct" of interacting with BlueTeam members for almost a year (before raising the issue of assignment for the first time when terminating the contract) waived its ability to terminate based on the anti-assignment provision. The Court finds that this argument, too, is inappropriate for resolution on summary judgment. *Safeco Ins. Co. of Am. v. Clear Vision Windshield Repair, LLC*, 564 S.W.3d 913, 920 (Tex. App. 2018) ("Waiver generally is a question of fact to be resolved by the trier of fact.").

Piazza's motion for summary judgment is accordingly denied.

### B. Sendero's Motion for Partial Summary Judgment

The Court now considers Sendero's motion for summary judgment. The only outstanding argument[68] in that motion is the original contention in Sendero's Demand Letter and its Second Amended Complaint: That is, before Piazza terminated the contract in its February 1, 2023 Response Letter, Piazza had already functionally terminated the contract without "good cause"—or, essentially, repudiated it—by (i) refusing to schedule the repair work within the required 30 days of receiving the insurance proceeds, and (ii) refusing to comply with Plaintiffs' request in the January 18, 2023 Demand Letter to schedule the work. Sendero maintains this termination of the contract without "good cause" triggered the liquidated damages provision, which Piazza refused to pay, in further breach of the contract.[69]

---

[68] Sendero's chief argument in its motion for summary judgment—that when Piazza sent its February 1, 2023 letter terminating the contract, Piazza could not, as a matter of law, have had "good cause" to do so because the Restoration Contract had not actually been assigned—has already been rejected.

[69] *See* ECF No. 48-2 at 8 (accusing Piazza of "refus[ing] to schedule the work []well over 30 days from receipt of the insurance payments") (emphasis omitted); ECF No. 48-5 § 6 ("If [Piazza] cancels this Agreement, without good cause, the Parties agree that Sendero would be entitled to

This argument appears to generally track the Restatement (Second) of Contracts § 251 (1981), which provides that where "reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach under § 243, the obligee may demand adequate assurance of due performance . . ." The obligee "may treat as a repudiation the obligor's failure to provide within a reasonable time such assurance of due performance as is adequate in the circumstances of the particular case." *Id.* "Whether 'reasonable grounds' have arisen for an obligee's belief that there will be a breach must be determined in the light of all of the circumstances of the particular case." *Juarez v. Hamner*, 674 S.W.2d 856, 861 (Tex. App. 1984); *see also, e.g.*, *Roden v. Texas Mun. Police Ass'n, Inc.*, 2013 WL 12121109, at *10 (W.D. Tex. Mar. 25, 2013) (holding after bench trial that facts established employee repudiated employment contract with employer).

Sendero asserts Piazza received approximately $210,000 from its insurer in November 2021 and $967,482.39 from its insurer on or about December 7, 2022.[70] According to Sendero, Piazza was refusing to schedule the repair work within 30 days of receiving the second insurance payment for the full "Proof of Loss" amount as required by the contract. *See* ECF No. 48-5 § 2 (stating "the Agreement Amount

---

liquidated damages."); ECF No. 35-5 (January 18, 2023 Demand Letter) ("If within ten (10) days of this letter, you fail to withdraw termination of the Contract, BlueTeam demands that you pay . . . the liquidated damages BlueTeam is entitled to receive if the Contract is terminated by you without cause."); ECF No. 35 ¶ 17 (Second Amended Complaint) ("The January 18, 2023 letter [] stated that, in the event Piazza failed to respond within ten (10) days . . . Plaintiffs demanded . . . the liquidated damages Plaintiff is entitled to as a result of Piazza's termination of the Contract without cause.").

[70] ECF No. 48-2 at 8; ECF No. 48-6 at 39:2-6 (Hirsch Depo.); ECF No. 48-6 at 50 (check from minuteman adjusters dated December 7, 2022).

[Piazza] owes Sendero for repairs shall be the replacement value delineated in the insurance carrier's Proof of Loss"); *id.* § ("Customer will schedule the work within thirty (30) days of Customer's receipt of any payments from the insurance carrier . . . ."). In support, Sendero points to the January 18, 2023 Demand Letter's contention that Piazza had informed BlueTeam that it "wish[ed] to terminate the Contract"[71] and a November 21, 2022 email in which BlueTeam confirmed it "ha[s] materials ordered and would like to get started late next week" on the roof repairs.[72]

The Court finds that Sendero cannot carry its summary judgment burden to show that Piazza repudiated the contract and terminated without good cause when it allegedly refused to schedule the repair work in January 2023.[73] According to Piazza, it was "in fact trying to schedule the work" throughout this time, and never sought to exit the contract before it sent its February 1, 2023 Response Letter.[74] Piazza contends it couldn't schedule the work because Sendero was "refusing to answer its follow up questions."[75] In support, Piazza cites the 30(b)(6) deposition of Barbara Hirsch, Piazza's Chief Financial Officer, who says: "[w]e never stated we wouldn't move forward with the work. We wanted some further explanation and

---

[71] ECF No. 55-2.

[72] ECF No. 48-6 (Piazza Corp. Depo 58:12-59:20); *id.* at 140.

[73] Sendero argues the Court can grant its motion for summary judgment because contract interpretation is a question of law and the Restoration Contract is unambiguous. *See, e.g., Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) ("Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide"); *Daniels v. Cortez*, 2019 WL 3022973, at *2 (Tex. App. July 11, 2019) ("When the controversy can be resolved by proper construction of an unambiguous document, rendition of summary judgment is appropriate."). But the parties do not appear to present any contractual interpretation questions in their briefing. Instead, the parties quarrel over various factual disputes about the timing and scope of the negotiations related to scheduling the repairs.

[74] ECF No. 64 at 15.

[75] *Id.*

22

further discussion."[76] *See also* ECF No. 49-3 ¶ 10 (Hirsch Decl.) ("We did not say we were terminating the Contract – in fact we were trying to get answers from Mr. Scott and his team . . . .").[77] Piazza says it was "uncomfortable" with a change in personnel, including a new primary contact on the contract who had been present during the contract negotiations, whom Piazza did not like, and who Piazza felt was "trying to push our repair project forward in the face of our questions and increasing discomfort."[78]

Sendero, for its part, counters with emails that it says shows its subcontractor BlueTeam was communicating with Piazza to coordinate the repairs and that it consistently made itself available for Piazza to ask any questions throughout the process. *See, e.g.*, ECF No. 48-6 at 139 (November 11, 2022 email from BlueTeam stating "[T]he roofing material manufacturer is needing to complete the design specifications for our roofing installation . . . . If you have any questions, please let me know."). The parties also disagree about when, exactly, Piazza received the funds from its insurer and when it was supposedly refusing to schedule the repair work. The parties appear to agree that Piazza received its first, partial payment from the insurance company for approximately $210,000 sometime in November of 2021.[79] But they dispute what happens next: at some point over a year later, Piazza received a check dated December 7, 2022 from its insurance company for $967,482.39.[80] Piazza's

---

[76] ECF No. 64-1 at 29:9-14. (Piazza 30(b)(6) Depo.).

[77] ECF No. 49-3 ¶ 10 (Hirsch Decl.).

[78] *Id.* ¶ 8.

[79] ECF No. 64 (Piazza agreeing with Sendero "the first payment from the insurance company was issued in November 2021").

[80] ECF No. 48-6 at 50 (check from minuteman adjusters dated December 7, 2022).

checking account shows the cash was not deposited into Piazza's account until February 3, 2022.[81]

With this conflicting evidence as to when, and whether, Piazza was refusing to schedule the work and whether it was seeking to terminate the contract prior to its February 1, 2023 Response Letter, the Court finds that Sendero has not carried its summary judgment burden. Drawing all reasonable inferences in favor of Piazza, the nonmoving party, the Court finds Piazza counters Sendero's assertions with sufficient evidence to demonstrate the existence of genuinely disputed material facts as to whether Piazza sought to repudiate and terminate the contract without "good cause" prior to sending its February 1, 2023 Response Letter. *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). These are factual disputes to be resolved at trial. *See* FED. R. CIV. P. 56(a).

Accordingly, Sendero's motion for summary judgment is denied.

---

[81] *Id.* at 51 (Piazza's checking account).

## IV.   CONCLUSION

**IT IS ORDERED** that Sendero's motion[82] for partial summary judgment is **DENIED** and Piazza's motion[83] for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Piazza's answer[84] to Plaintiffs' second amended complaint[85] is **ADMITTED** into the record.

New Orleans, Louisiana, this 12th day of January, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[82] ECF No. 48.
[83] ECF No. 49.
[84] ECF No. 87-1.
[85] ECF No. 35.